UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NAEEM MILLER,<br>NAEEM WILLIAMS;<br>YSNAISHA MILLER;<br>ESTATE OF MICHELLE MILLER;<br>JANNA MILLER;<br>RASHEED MILLER, | **COMPLAINT**<br><br>Index No. 24-cv-_____ |
| Plaintiffs, | **JURY TRIAL**<br>**DEMANDED** |
| -against- | |
| GREGORY DEMATTIA;<br>MURAD MUHAMMAD;<br>STATE OF NEW JERSEY;<br>CITY OF NEWARK, NEW JERSEY;<br>JOHN DOE No. 1 THROUGH No. 10<br>(TRUE IDENTITY BEING PRESENTLY<br>UNKNOWN AND GENDER NEUTRAL),<br>INDIVIDUALLY AND IN THEIR<br>RESPECTIVE OFFICIAL CAPACITY, | |
| Defendants. | |

Plaintiffs NAEEM MILLER ("Plaintiff" or "Naeem" or "Mr. Miller"), NAEEM

WILLIAMS ("Williams"),  YSNAISHA MILLER  ("Ysnaisha"), ESTATE OF

MICHELLE MILLER ("Estate"), JANNA MILLER ("Jana"), and RASHEED MILLER

("Rasheed")  by their attorney, FREEMAN & PATEL, L.L.C.  (JARRED S. FREEMAN,

ESQ. appearing) , respectfully allege, upon information and belief, as follows:

## NATURE OF ACTION

1.  In 2004 Naeem Miller was arrested, indicted, tried and convicted of a murder

and aggravated assault and sentenced to an aggregate term of 37 years with a

1

35 year parole disqualifier; Mr. Miller was imprisoned and held in captivity for 20 years as a prisoner for crimes he did not commit.

2.    Mr. Miller's was convicted solely due to and because the Defendants violated his state and federal constitutional rights.

3.    An Essex County Law Division Judge vacated Miller's conviction in June, 2023 on the basis that discoverable evidence favorable to Miller had been wrongfully, deliberately and in bad faith withheld from the defense, but not until Miller had endured the trauma of his prosecution, conviction and, most importantly, his having served twenty years in state prison custody.[1]

4.    This miscarriage of justice was directly caused by the unconstitutional and unconscionable misconduct of Newark Police Detective MURAD MUHAMMAD ("Murad") and Essex County Assistant District Attorney GREGORY DEMATTIA ("DeMattia"), as well as the customs and policies of the Newark Police Department ("NPD") and the State of New Jersey ("State").

5.    This is a civil action, pursuant to 42 U.S.C. §§ 1983 and 1988, seeking monetary damages for Plaintiff Miller and his immediate family members because Miller spent over 20 years wrongfully incarcerated based upon a murder charge on which he was convicted solely due to and based on the defendants' wrongful suppression and destruction of evidence favorable to Miller and the fabrication of false evidence prejudicial to Mr. Miller.

6.    Miller's damages also resulted from the failure of Murad and DeMattia, in

---

[1]    Miller's incarceration commenced on May 28, 2004, and he was continuously incarcerated on the instant conviction thereafter until June 30, 2023.

violation of their obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and

*Giglio v. United States,* 405 U.S. 150 (1972) (collectively "Brady"), to disclose to

Miller's trial attorney and the trial Court that these defendants had engaged in

wrongful suppression and destruction of evidence favorable to Miller and the

fabrication of false evidence prejudicial to Mr. Miller.

7.    The City of Newark/State of New Jersey is each liable to Plaintiff for the

damages caused by the *Brady* violation because it foreseeably resulted from the

unlawful or deliberately indifferent policies, customs, and practices of the

Newark Police Department ("NPD") and the State.


## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

8.    This action arises under and pursuant to 42 U.S.C. §§ 1983 and 1988.

9.    Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the events giving

rise to the instant claims occurred in Newark, New Jersey.

11.    This action is timely because it was commenced within two years of the time

that Miller's federal causes of action accrued.

12.    Plaintiffs have duly complied with all conditions precedent to the

commencement of this action, including the filing of a notice of tort claim with

the relevant entities.

## THE PARTIES

13.    Plaintiff, NAEEM MILLER, at all relevant times, is a citizen and resident of the

State of New Jersey and the United States and resides within the District of

New Jersey.

14. Plaintiff WILLIAMS, at all relevant times, is a citizen and resident of the State of New Jersey and the United States and resides within the District of New Jersey; he is the son of Naeem and is asserting a per quod cause of action.

15. Plaintiff YSNAISHA, at all relevant times, is a citizen and resident of the State of New Jersey and the United States and resides within the District of New Jersey; she is the daughter of Naeem and is asserting a per quod cause of action.

16. Plaintiff JANA, at all relevant times, is a citizen and resident of the State of New Jersey and the United States and resides within the District of New Jersey; she is the sister of Naeem and is asserting a per quod cause of action.

17. Plaintiff ESTATE represents Michelle Miller, now deceased, who at all relevant times was  a citizen and resident of the State of New Jersey and the United States and resided within the District of New Jersey; she is the mother of Naeem and is asserting a per quod cause of action.

18. Plaintiff RASHEED, at all relevant times, is a citizen and resident of the State of New Jersey and the United States and resides within the District of New Jersey; he is the brother of Naeem and is asserting a per quod cause of action.

19. Defendant City of Newark ("City") is a municipal corporation of the State of New Jersey and is located within the District of New Jersey; the NPD is an agency of the City.

20. Defendant Murad was at all relevant times a detective employed by the NPD, acting within the scope of his authority and under color of State law and acting

4

within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs, and practices of the City and the NPD. He is named herein in his individual and official capacities.

21. Defendant DeMattia was at all relevant times an Assistant Essex County Prosecutor employed by the Essex County Prosecutor's Office and the County of Essex/State of New Jersey, acting within the scope of his authority and under color of State law. He is named here in his individual and official capacities.

22. John Doe No. 01 through 10 (collectively "Doe") are gender neutral fictitious defendants, who are entities and/or individuals whose true identity is unknown to Plaintiff but whose identity may be revealed during the period of discovery that will occur relative to this action, and who may be liable in whole or in part for Plaintiff's damages as referenced herein. Such individuals/entities may include but are not necessarily limited to agents and servants of the NPD, Essex County, the State of New Jersey and the like.

23. Several of the said Doe defendant(s) were at all times relevant to this Complaint City or NPD or Essex County or State of New Jersey agents, supervisors, and other officials who participated in the investigation and prosecution of Plaintiff Miller. They are sued in their individual capacities. Plaintiff Miller does not presently know the names of these defendants but will seek leave to amend the Complaint so as to name each appropriate defendant after the completion of additional discovery.

24. The Doe defendants constitute individuals, parties, employees and/or agents of the named defendants and it is intended that such individuals and other

entities will be more particularly identified in the amendments to pleadings following completion of discovery.

25.   Defendants Murad, DeMattia and Doe will be referred to herein as "the individual defendants."

26.   The individual Defendants had a known duty to honor and not violate or abridge the Constitutional rights of persons being investigated and prosecuted for having committed a criminal offense, such as Mr. Miller.

27.   By the negligent conduct, acts, deliberate indifference, and omissions complained of herein, the individual defendants violated the clearly established constitutional standards under Brady and the Fourteenth Amendment to the United States Constitution of which a reasonable individual under the circumstances should have known.

28.   Each of the individual Defendants is sued in his or her individual and official capacity. At all times relevant to the events, negligent acts, deliberate indifference, and/or omissions alleged in this Complaint, the individual defendants, individually and collectively, have acted under color of state law, pursuant to their authority and responsibilities as officials, employees and/or agents of the City and the State.

29.   The City failed to train its NPD officers, agents, and employees with respect to the proper procedure for honoring and not violating or abridging the Constitutional rights of persons being investigated for having committed a criminal offense. That failure constituted deliberate indifference to the

constitutional rights of those persons the NPD are investigating for having committed a criminal offense, such as Mr. Miller.

30.    The omissions and/or negligence and/or deliberate indifference by the City in properly training its police employees with respect to the proper procedure for honoring and not violating or abridging the Constitutional rights of persons being investigated and prosecuted for having committed a criminal offense reflected a deliberate and conscious choice by the City and was the moving force behind the violation of the constitutional rights of Mr. Miller.

31.    In the alternative, if the City did have a policy or program which was designed for honoring and not violating or abridging the Constitutional rights of persons being investigated for having committed a criminal offense, said program was inadequate to achieve this goal and constituted negligence and/or deliberate indifference by the City.

32.    The State failed to train its officers, agents, and employees with respect to the proper procedure for honoring and not violating or abridging the Constitutional rights of persons being investigated for having committed a criminal offense. That failure constituted deliberate indifference to the constitutional rights of those with whom the State was prosecuting for a criminal offense, such as Mr. Miller.

33.    The omissions and/or negligence and/or deliberate indifference by the State in properly training its officers, agents, and employees with respect to fulfilling its responsibility with respect to the proper procedure for honoring and not violating or abridging the Constitutional rights of persons being investigated

7

for having committed a criminal offense reflected a deliberate and conscious choice by the State and was the moving force behind the violation of the constitutional rights of Mr. Miller.

34.    In the alternative, if the State did have a policy or program which was designed with respect to the proper procedure for honoring and not violating or abridging the Constitutional rights of persons being investigated for having committed a criminal offense, said program was inadequate to achieve this goal and constituted negligence and/or deliberate indifference by the State.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

## THE MURDER CHARGE/TRIAL/SENTENCE

35.    The case involves the shooting and murder of a Timothy Philips, and the wounding of a Stacey Davis in Newark, New Jersey in the early morning hours of December 16, 2001.

36.    In addition to the murder of Mr. Philips at that time and place, a second person was wounded by gunfire (presumably aimed at Mr. Philips but which was misdirected) wounding a second victim, Mr. Stacey Davis.

37.    Soon after the Philips murder and the wounding of Mr. Davis occurred the NPD assigned Defendant Murad and Investigator Ben Powell ("Powell") as the co-chief detectives on the case to launch an investigation, which resulted in two witnesses being indentified.

38.    During his investigation Murad and Powell canvassed the people present when the shooting occurred and identified two witnesses: FELICIA WRIGHT

("Wright") and a STACEY DAVIS ("Davis").

39.   Formal commencement of the criminal case and prosecution occurred on
      January 18, 2002, with the filing of a criminal complaint against Mr. Miller
      which had been prepared, approved and filed by the individual defendants.

40.   In this criminal complaint that the charges against Naeem were based upon the
      statements provided by Wright and Davis.

41.   Thereafter, on May 16, 2003 an Essex County Grand jury returned a four count
      indictment (Essex County Ind. No. 03-05-1830-I) against Mr. Miller, charging
      him with murder, aggravated assault and two counts of illegal weapons
      possession.

42.   The evidence to the grand jury was presented by Gregory DeMattia, who also was
      the trial prosecutor.

43.   Miller was charged under Essex County Indictment No. 03-05-1830 with the
      first degree murder of Timothy Phillips, contrary to N.J.S.A. 2C:11-3(a)(2)
      (count one); second degree aggravated assault of Stacy Davis, contrary to
      N.J.S.A. 2C:12-1b(1) (count two); third degree unlawful possession of a
      handgun, contrary to N.J.S.A. 2C:39-5b (count three); and second degree
      possession of a handgun, with a purpose to use it unlawfully against the person
      of another, contrary to N.J.S.A. 2C:39-4a (count four).

44.   After a seven-day trial, conducted in March and April 2005, the jury found
      defendant guilty of all charges.

45.   On May 13, 2005, Judge Thomas R. Vena sentenced defendant to a term of
      thirty years in prison, with thirty years of parole ineligibility, pursuant to the

No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, for the murder conviction and a consecutive seven-year term with parole ineligibility for eighty-five percent of that term pursuant to NERA for the conviction for aggravated assault. The court also imposed a concurrent four-year term for the conviction on the third count, unlawful possession of the handgun, and merged the fourth count, possession of the handgun for an unlawful purpose, with counts one and two.

46.   Defendant's direct appeal to the Appellate Division was denied, as were several post-conviction motions.

### THE TRIAL OF MR. MILLER

47.   During and in relation to the criminal trial of Mr. Miller, Mr. DeMattia presented two alleged eyewitnesses: Ms. Felicia Wright and Mr. Stacey Davis.

48.   Soon after the murder had occurred Mr. Davis was interviewed by the individual defendants and he picked out from a photo array a picture of the Mr. Miller as the person he observed shooting the victim several times; at trial he recanted this identification saying that "No... that can't be him right there... he just - he don't look the same." referring to Mr. Miller in the courtroom at trial.

49.   Mr. Davis' explanation of his recanting the identification of Mr. Miller was that the Miller had a haircut and Davis was unable to identify him due to the shortened hair.

50.   The second State's witness produced by Mr. DeMattia is Ms. Felicia Wright, who testified on March 23, 2005.

51.   As is relevant herein Ms. Wright stated that she has known Mr. Miller for over 15

10

years and that he is the cousin to her daughter's father.

52.    Ms. Wright further stated that she was in Roland's Tavern when a fight involving a Kevin Phillips occurred. When the bar closed, she went to the front door and was about to exit when she heard six or seven gunshots. She then walked outside and saw a man, whom she later learned was Timothy Phillips, lying in the street outside of Roland's Tavern. She and Phillips had known each other for years.

53.    Wright also saw several people running from the scene, including Naeem Miller; she knew Miller because he is her child's father's cousin. Both she and Miller lived in the neighborhood in which Roland's Tavern is located, but they did not socialize together or spend any time together. She did not see him in the bar that night.

54.    Furthermore, the man Wright believed to be the defendant was across the street from her when she quickly saw him. She did not know where he was coming from, and she estimated that he was about 50 feet away from Timothy Phillips when she first saw him. He then ran to Scheerer Avenue, turned the corner, and was out of Wright's sight.

55.    Wright also testified that she could see a black gun in the man's right hand as he ran, although she acknowledged that she saw him in profile, and his left side was facing her; she also described the gun as a black automatic.

56.    At trial, Wright also testified that when she saw the man running with the gun, she "believed" but was not 100% sure it might be Mr. Miller and had a doubt that it was Miller; later that night, when she heard people saying that

Miller was the shooter, she became more convinced that Miller was in fact the man she had seen.

57. On its opening Mr. DeMattia promised that during the trial the jury would hear from eye "witnesses who will testify as to the shooting."

58. Prior to her testifying DeMattia, at a side-bar, characterized Felicia Wright as being "more important with this thing that(sic) Mr. Phillips . . . ."

59. In his summation DeMattia observed and submitted to the jury that with respect to the testimony of Felicia Wright that there "is no testimony that there is anything wrong with her" and that her testimony should be accepted and relied upon by the jury because you cannot "call her a liar if you've got nothing to support it."

60. At no point during either the direct or cross examination of Ms. Wright, or at any time during the trial, was it brought out that Ms. Wright at the time she testified had a 2004 open and pending criminal indictment in Morris County.

61. The relative weakness in the State's case is demonstrated by the fact that after two days of jury deliberations it advised Judge Vena that it was hopelessly deadlocked and hung and could not reach a unanimous verdict; Judge Vena then provided a supplemental Allen charge which resulted in a guilty verdict the day after it was given.

## THE UNDISCLOSED BRADY/GIGLIO EVIDENCE

62. On or about February 08, 2005, after the death of Investigator Powell, the individual defendants requested and received a CCH report regarding Ms. Wright from the New Jersey State Police.

12

63.     This CCH report reflected that Ms. Wright was the subject of an open and pending Morris County criminal charge which arose on or about February 25, 2004, when Ms. Wright was arrested by the Morris County Prosecutor's Office on four charges: identity theft, forgery, theft by unlawful taking and hindering prosecution (by giving a false name, LORRECE COOK, when arrested).

64.     This Wright CCH report is quintessential Brady evidence to which Miller had an absolute right under the Fifth and Fourteenth Amendments to receive.

65.     The individual defendants illegally and unlawfully agreed, conspired and combined to knowingly and intentionally suppress and conceal the Wright CCH from Miller and the Court, because if Miller was aware of it it would of benefit and useful to Mr. Miller.

66.     Ms. Wright eventually entered a plea of guilty to the four counts and was sentenced to probation in December, 2009 (which was transferred to Essex County) and thereafter a bench warrant issued against her for violation of probation in May 2011.

67.     Circumstantially it appears plausible that as she was the main witness against Mr. Miller that the State permitted this relatively simple matter in Morris County to drag on for five years, until sentencing in December, 2009, as a courtesy to its main witness against Mr. Miller and as motivation for Ms. Wright to help the State to the extent possible.

68.     At no time during the direct or cross-examination of Ms. Wright was the Morris County criminal matter mentioned or addressed by either DeMattia or Miller defense attorney.

69. Subsequent to conclusion of Miller's trial in 2005, and through 2023, the individual defendants failed and refused to disclose and continued to intentionally and deliberately conceal and suppress the existence of Wrights' 2005 CCH report.

70. The individual defendants' failure to disclose the Morris county criminal matter involving Ms. Wright is a Brady/Giglio violation, which violated Mr. Miller's right to a fair trial and his due process rights, because the withheld Brady evidence had a reasonable probability of affecting a judicial proceeding. V, VI, XIV U.S.C.A.

## INVESTIGATION PRIOR TO AND AFTER MILLER'S TRIAL

71. The individual defendants uncovered critical evidence by virtue of the receipt of the 2005 Wright CCH report that was of benefit to and to which Mr. Miller was entitled to receive, which should have been disclosed to Miller prior to trial.

72. But the individual defendants willfully, deliberately and intentionally disregarded and withheld that evidence in their rush to unjustly convict Mr. Miller.

73. Subsequent to the conviction and sentencing of Mr. Miller, and up through 2022, the individual defendants were continually aware of the 2005 Wright CCH report and willfully, deliberately and intentionally disregarded and withheld and suppressed that evidence so as to continually prejudice Mr. Miller.

74.     Further investigation revealed Felicia Wright's Judgement of Conviction for the Morris County charge reflect that she received consideration for cooperation with authorities.

75.     The Brady rule mandates that a State prosecutor and/or investigating police officer, such as the individual defendants, has a continuing duty, even after trial, conviction and sentencing, to disclose evidence favorable to accused which was not timely produced prior to or at trial because the withheld Bray evidence had a reasonable probability of affecting a judicial proceeding.

76.     The actions and conduct of DeMattia with respect to this issue, and his continued suppression and concealment of the Brady evidence, did not occur in his prosecutorial capacity but as a post-trial, non-advocacy/investigative law enforcement task.

### The Brady/New Trial Motion

77.     In May 2019, Miller's counsel moved under R. 3:20-1 to vacate Miller's conviction.

78.     The basis for this new trial motion was that, at the time of the trial, the individual defendants, in violation of Miller's constitutional right to notice of evidence favorable to the defense under *Brady*, had not disclosed and had concealed the fact that when she testified Ms. Wright had an open and pending indictment in Morris County.

79.     By order filed on June 01, 2023 the Hon. Verna Letha, J.S.C. granted Miller's motion and vacated his conviction for murder and aggravated assault.

80.     Judge Leath found as fact that the State was aware of and had documented

proof no later than February 08, 2005, which is prior to trial, of Wright's
pending and open Morris County Indictment and intentionally concealed and
failed to disclose it to Mr. Miller and such concealment and suppression were
intentional and in bad faith and violated Miller's due process rights under the
Fifth and Fourteenth Amendments.

81.    In summary, Judge Leath found and held as a matter of law that the
"violations under Brady-Giglio deprived the defendant of-- of a right to
procedural and substantive due process. This was a trial by jury. Any credibility
determinations would have -- or obviously would have been made by the jurors,
and the absence of giving the jury an opportunity to make a credibility
assessment on information that was available to the State, not provided to the
defense, The Court does find that the  State -- defense has satisfied its burden,
as set forth under the three prongs of -- of STATE VS. CARTER. The
defendant's application for a new trial is thereby granted."


## LACK OF POLICY OR TRAINING

82.    At all relevant times the NPD did not have a policy which instructs a detective
such as Murad that relevant Brady information must be disclosed to a
defendant prior to trial, even if it is exculpatory.

83.    At all relevant times the NPD did not have a policy which informs a detective
such as Murad that they may not withhold Brady evidence from a defendant,
even if it is exculpatory.

84. At all relevant times the NPD did not provide a detective such as Murad any training regarding the obligation of detectives to disclose Brady evidence to a defendant, even if it is exculpatory.

85. At all relevant times the NPD did not inform a detective such as Murad during training that they may not withhold Brady evidence from a defendant and that a detective is obligated even post-trial to disclose the existence of Brady evidence not timely disclosed.

86. At all relevant times the State did not have a policy which instructs a prosecutor such as DeMattia that relevant Brady information must be disclosed to a defendant prior to trial, even if it is exculpatory.

87. At all relevant times the State did not have a policy which instructs a prosecutor such as DeMattia that they may not withhold Brady evidence from a defendant, even if it is exculpatory.

88. At all relevant times the State did not provide a prosecutor such as DeMattia any training regarding the obligation of prosecutors to disclose Brady evidence to a defendant, even if it is exculpatory.

89. At all relevant times the State did not inform a prosecutor such as DeMattia during training that they may not withhold Brady evidence from a defendant and that a prosecutor is obligated post-trial to disclose the existence of Brady evidence not timely disclosed.

90. The actions and conduct of the individual defendants herein were intentionally, deliberately and in bad faith undertaken.

## DAMAGES AND INJURIES

91.   Plaintiff Miller's injuries and damages include, but are not limited to, his:

a.   Wrongful arrest, prosecution, and conviction for murder;

b.   Loss of his liberty including 20 years of incarceration;

c.   Loss of the services, society, companionship, and consortium of his family and friends;

d.   Past and future mental and emotional suffering;

e.   Fees paid to private criminal defense attorneys exceeding $50,000; and

f.   Past and future loss or diminution of employment earnings in an amount determined by an economic expert to be over $10,000,000.

92.   Plaintiffs NAEEM WILLIAMS, YSNAISHA MILLER  (DAUGHTER), ESTATE OF MICHELLE MILLER (MOM), JANNA MILLER (SISTER), RASHEED MILLER (BROTHER) each assert a per quod  claiming he/she has been deprived of Naeem Millers love, companionship, affection, society, consortium, comfort, services, and support as a result of Naeem Miller's injuries and losses.

93.   Each of the preceding paragraphs is repeated and incorporated by reference into each of the following paragraphs.

<u>**FIRST CAUSE OF ACTION**</u>

**(42 U.S.C. § 1983; Denial of Liberty, Due Process,
and a Fair Trial Under the Fourth, Fifth, Sixth, and
Fourteenth Amendments by the Individual
Defendants)**

94.    The individual Defendants, individually, acting in concert, and/or aiding and
abetting one another, deliberately, willfully, recklessly, and/or with deliberate
indifference to the truth, manufactured and presented during Miller's trial
false evidence against Plaintiff, including but not limited to suppression and
concealment of the 2005 Wright CCH report, the allegations that Wright had no
criminal history or charges and caused such false allegations to be documented
in police reports and other police paperwork, and in argument at trial.

95.    The false evidence was material to Plaintiff's prosecution for murder and it was
reasonably likely to influence a jury to convict Miller.

96.    The individual Defendants forwarded, caused to be forwarded, or aided and
abetted the forwarding of, this false evidence to Miller's trial jury.

97.    The individual Defendants knew that the evidence they had fabricated and
caused to be transmitted to the court was likely to adversely influence the
decision by a trial jury whether to convict him.

98.    In fact, the fabricated evidence was a substantial and proximate cause of
Plaintiff's deprivation of liberty and other injuries, including but not limited to
his prosecution, detention, conviction, and 20 years imprisonment in state
prison.

99.    The prosecution for murder caused by the individual defendants' fabricated

19

evidence was terminated in Plaintiff's favor.

100.   The individual defendants are therefore liable to Miller, under 42 U.S.C. §§ 1983 and 1988, for all the reasonably foreseeable injuries that their unlawful conduct caused and for Plaintiff's attorneys' fees, costs, and expenses.

**SECOND CAUSE OF ACTION**

**(42 U.S.C. § 1983; Malicious Prosecution Under the Fourth, Fifth, and Fourteenth Amendments by the Individual Defendants)**

101.   The individual defendants knowingly, willfully and with actual malice initiated, or caused the initiation and continuation of, Miller's prosecution for murder, without probable cause.

102.   The individual defendants knowingly, willfully and with actual malice initiated, or caused the initiation and continuation of, Miller's prosecution for murder by and through the suppression and/or destruction of evidence favorable to Miller and thereafter manufactured false evidence against Mr. Miller.

103.   They caused Miller to be deprived of his liberty.

104.   The prosecution for murder was terminated in Miller's favor.

105.   The individual defendants' conduct was outrageous and shocking to the conscience.

106.   The individual defendants' above described conduct was a substantial and proximate cause of Miller's criminal conviction and the deprivation of Plaintiff's right to be free of unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution, as well as his right to substantive and procedural due process under the Fifth and Fourteenth

Amendments.

107.   The individual defendants are therefore liable to Miller, under 42 U.S.C. §§

1983 and 1988, for all the reasonably foreseeable injuries that their unlawful

conduct caused and for Plaintiff's attorneys' fees, costs, and expenses.

### THIRD CAUSE OF ACTION

**(42 U.S.C. § 1983; Denial of Due Process and a Fair
Trial Under the Fifth and Fourteenth Amendments
by the Individual Defendants)**

108.   At the time of Miller's trial, the individual defendants had a constitutional duty

to protect Mr. Miller's Constitutional rights by informing Mr. Miller of Brady

evidence known to them that was potentially material to the outcome of the

trial and not to create or fabricate false evidence.

109.   The information they failed to disclose was material to the outcome of the trial

because, had such information been timely disclosed, there is a reasonable

probability that Plaintiff would have been acquitted of all charges or achieved a

more favorable outcome to the trial.

110.   The individual defendants' failure to disclose the 2005 CCH report of Ms.

Wright was a substantial and proximate cause of Plaintiff's injuries, including

his conviction, incarceration in state prison, as well as the false evidence

fabricated by the individual defendants.

111.   The individual defendants failed to disclose such Brady material at any tine

prior to or post-trial knowingly, willfully, intentionally, recklessly, negligently,

and with deliberate indifference to their obligation to do so.

112.   The individual defendants are therefore liable to Miller, under 42 U.S.C. §§ 1983

and 1988, for all the reasonably foreseeable injuries that their unlawful conduct caused and for Plaintiff's attorneys' fees, costs, and expenses.

### FOURTH CAUSE OF ACTION

**(*Monell*/42 U.S.C. § 1983 Claim Against Defendant
City of Newark for *Brady* Violations by the NPD)**

113.   Prior to Mr. Miller's criminal trial, policymaking officials of the NPD, due to their deliberate indifference to the *Brady* rights of criminal defendants, implemented inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning the duty of police officers to make timely disclosure of Brady evidence or information favorable to criminal defendants, including evidence or information impeaching the credibility of prosecution witnesses, such as Ms. Wright, and to not permit the fabrication of false evidence.

114.   More specifically, policymaking officials at the NPD knew that members of the force often acted as essential witnesses in criminal prosecutions and that many of them face, or have faced, lawsuits alleging they engaged in various types of misconduct, including fabricating evidence, stealing, other acts of dishonesty, and making arrests without probable cause.

115.   At the time of Miller's trial the NPD had adopted no policy, practice, or procedure requiring such police witnesses to provide Brady evidence to the defendant on trial, such as Mr. Miller.

116.   Prior to Plaintiff's trial, the NPD failed to even train or instruct members of the police, such as Murad, concerning their *Brady*/*Giglio* obligation to disclose

evidence impeaching the credibility of prosecution witnesses and failed to supervise such members to ensure they fulfilled their obligation under the law to make such disclosures.

117.    Although the issue of whether to disclose various forms of impeachment material regularly arises, prior to Miller's trial NPD policymaking officials issued no provision or other written directive to officers concerning when, if at all, to disclose such impeachment information.

118.    The training on *Brady* given to NPD members did not mention *Giglio* or instruct officers that they had a duty to disclose impeachment material to prosecutors.

119.    Moreover, at all times relevant to this case, the NPD failed to discipline members of service for failing to timely provide *Brady* material, including impeachment evidence, or to provide such evidence post-trial.

120.    As a result of the NPD's inadequate training, supervisory and disciplinary policies and practices, the individual defendants failed to timely disclose Wright's 2005 CCH report, and this was a substantial cause of the Plaintiff's conviction and resultant injuries.

121.    The NPD and/or other municipal policymakers knew or should have known that whether to disclose impeachment evidence favorable to a criminal defendant presents the kind of difficult or non-obvious choice that instruction, training, supervision, and discipline would make less difficult.

122.    The NPD and/or other municipal policymakers knew or should have known that the failure of police officers to disclose such Brady material would necessarily

cause the deprivation of the constitutional rights of criminal defendants.

123.   Under the principles of municipal liability for federal civil rights violations, the NPD has final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the constitutional requirements governing the disclosure of *Brady* material.

124.   The NPD and/or through its authorized delegates, at all relevant times had final authority, and constitutes a City policymaker for whom the City is liable, with respect to compliance by NPD employees with their *Brady* obligations.

125.   During all times material to this Complaint, the NPD owed a duty to the public at large and to Plaintiff Miller, which it knowingly and intentionally breached, or to which it was deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct by its subordinates violating the due process and fair trial rights of criminal defendants and of other members of the public.

126.   The *Brady* violations in this case were directly, foreseeably, proximately, and substantially caused by conduct, chargeable to Defendant City, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities by the NPD and the ECPO.

127.   By virtue of the foregoing, Defendant City is liable, under 42 U.S.C. §§ 1983 and 1988, for all the reasonably foreseeable injuries that its unlawful conduct caused and for attorneys' fees, costs, and expenses.

## FIFTH CAUSE OF ACTION

### (*Monell*/42 U.S.C. § 1983 Claim Against Defendant State for *Brady* Violations by defendant DeMattia)

128.   Prior to Mr. Miller's criminal trial, policymaking officials of the State, due to their deliberate indifference to the *Brady* rights of criminal defendants, implemented inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning the duty of prosecutors to make timely disclosure of Brady evidence or information favorable to criminal defendants, including evidence or information impeaching the credibility of prosecution witnesses, such as Ms. Wright, and to not permit the fabrication of false evidence.

129.   At the time of Miller's trial the State had adopted no policy, practice, or procedure requiring prosecutors such as DeMattia to provide Brady evidence to a defendant and to not fabricate false evidence.

130.   Prior to Plaintiff's trial, the State failed to even train or instruct members of County prosecutors, such as DeMattia, concerning their *Brady*/*Giglio* obligation to disclose evidence impeaching the credibility of prosecution witnesses and failed to supervise such members to ensure they fulfilled their obligation under the law to make such disclosures.

131.   Although the issue of whether to disclose various forms of impeachment material to prosecutors regularly arises, prior to Miller's trial the State's policymaking officials issued no provision or other written directive to prosecutors concerning when, if at all, to disclose such impeachment

information.

132. The training on *Brady* given to County prosecutors did not mention *Giglio* or instruct prosecutors that they had a duty to disclose impeachment material to defendants, such as Mr. Miller.

133. Moreover, at all times relevant to this case, the State failed to discipline County prosecutors for failing to timely provide *Brady* material, including impeachment evidence, or to provide such evidence post-trial, to a defendant.

134. As a result of the State's inadequate training, supervisory and disciplinary policies and practices, the individual defendants failed to timely disclose Wright's 2005 CCH report, and this was a substantial cause of the Plaintiff's conviction and resultant injuries.

135. The State's policymakers knew or should have known that whether to disclose impeachment evidence favorable to a criminal defendant presents the kind of difficult or non-obvious choice that instruction, training, supervision, and discipline would make less difficult.

136. The State's policymakers knew or should have known that the failure of a County prosecutor to disclose such Brady material would necessarily cause the deprivation of the constitutional rights of criminal defendants.

137. Under the principles of liability for federal civil rights violations, the State has final responsibility for training, instructing, supervising, and disciplining County prosecutors with respect to the constitutional requirements governing the disclosure of *Brady* material.

138.   The State and/or through its authorized delegates, at all relevant times had final authority, and constitutes a policymaker for whom the State is liable, with respect to compliance by County prosecutors with their *Brady* obligations.

139.   During all times material to this Complaint, the State owed a duty to the public at large and to Plaintiff Miller, which it knowingly and intentionally breached, or to which it was deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct by its subordinates violating the due process and fair trial rights of criminal defendants and of other members of the public.

140.   The *Brady* violations in this case were directly, foreseeably, proximately, and substantially caused by conduct, chargeable to Defendant State, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities by the State and the ECPO.

141.   By virtue of the foregoing, Defendant State is liable, under 42 U.S.C. §§ 1983 and 1988, for all the reasonably foreseeable injuries that its unlawful conduct caused and for attorneys' fees, costs, and expenses.

## DAMAGES DEMAND

WHEREFORE, Plaintiff NAEEM MILLER demands judgment against the Defendants, jointly and severally, as follows:

a.     For compensatory damages of not less than $100 million;

b.     For punitive damages of not less than $100 million;

c.     For reasonable attorneys' fees, together with costs and disbursements,

pursuant to 42 U.S.C. § 1988 and to the inherent powers of this Court;

d.     For pre- and post-judgment interest as allowed by law; and

e.     For such other and further relief as this Court may deem just and proper.


WHEREFORE, Plaintiffs NAEEM WILLIAMS, YSNAISHA MILLER, ESTATE OF

MICHELLE MILLER, JANNA MILLER, RASHEED MILLER  each assert a

per quod  claim and demand judgment against the defendants, jointly and

severally, as follows:

a.     For compensatory damages of not less than $100 million;

b.     For punitive damages of not less than $100 million;

c.     For reasonable attorneys' fees, together with costs and disbursements,

pursuant to 42 U.S.C. § 1988 and to the inherent powers of this Court;

d.     For pre- and post-judgment interest as allowed by law; and

e.     For such other and further relief as this Court may deem just and proper.


LAW OFFICES OF  FREEMAN & PATEL, L.L.C.

/s/ Jarred S. Freeman
By:   JARRED S. FREEMAN, ESQ.
*Attorneys for the Plaintiffs*

Dated: Newark, New Jersey
     March 21, 2024