UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NAEEM MILLER, et al.,** *Plaintiffs,* v. **GREGORY DEMATTIA, et al.,** *Defendants.* | Civil Action No. 24-04328 ORDER |

**THIS MATTER** having come before the Court by way of (1) Defendant Gregory DeMattia's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c),[1] ECF No. 26 ("DeMattia's Motion"), and (2) Defendants the City of Newark's and Murad Muhammad's (together, the "City Defendants," and with DeMattia, "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),[2] ECF No. 32 (the "City's Motion," and with DeMattia's Motion, the "Motions");

and it appearing that Plaintiffs Naeem Miller ("Miller"), Naeem Williams, Ysnaisha Miller,

---

[1] Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is warranted if "there are no material issues of fact" and the movant is "entitled to judgment as a matter of law." Zimmerman v. Corbett, 873 F.3d 414, 417-18 (3d Cir. 2017) (citation omitted). The Court "must accept all of the allegations in the pleadings of the [non-moving party] as true and draw all reasonable inferences in favor of the non-moving party." Id. (citation omitted). The Court assesses a Rule 12(c) motion "under the same standards that apply to a Rule 12(b)(6) motion" to dismiss. Id. (citation omitted). Thus, to survive a Rule 12(c) motion, the claims in the complaint must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[2] In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted). To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

1

Janna Miller, Rasheed Miller, and the Estate of Michelle Miller (collectively, "Plaintiffs") oppose the Motions, see ECF Nos. 29, 40;

and it appearing that this matter arises from the alleged suppression of exculpatory evidence prior to, during, and following the trial, conviction, and sentencing of Miller, who spent approximately twenty years incarcerated as a result, see generally ECF No. 1 ("Compl.");

and it appearing that on December 16, 2001, Timothy Phillips was shot and killed, and Stacey Davis was shot and wounded, in Newark, New Jersey, see id. ¶ 35;

and it appearing that the Newark Police Department launched an investigation into the shootings and assigned Defendant Murad Muhammad and Investigator Ben Powell as the investigation's co-chief detectives,[3] see id. ¶ 37;

and it appearing that Muhammad and Powell identified two potential eye witnesses to the shooting:  Felicia Wright and Stacey Davis, see id. ¶ 38;

and it appearing that on January 18, 2002, DeMattia and Muhammad prepared, approved, and filed a criminal complaint against Miller, see id. ¶ 39;

and it appearing that on May 16, 2003, an Essex County Grand Jury returned a four-count indictment against Miller for the "first degree murder" of Phillips, "second degree aggravated assault" of Davis, "third degree unlawful possession of a handgun," and "second degree possession of a handgun, with a purpose to use it unlawfully against the person of another," see id. ¶ 43;

and it appearing that on or about February 8, 2005, Muhammad and DeMattia requested and received a Computerized Criminal History report of Wright from the New Jersey State Police (the "CCH Report"), see id. ¶ 62;

and it appearing that the CCH Report disclosed that Wright "was the subject of an open

---

[3] According to Plaintiffs' Complaint, Investigator Powell died before February 8, 2005.  See Compl. ¶ 62.

2

and pending Morris County criminal charge which arose on or about February 25, 2004, when" Wright was arrested on charges of "identity theft, forgery, theft by unlawful taking[,] and hindering prosecution," id. ¶ 63;

and it appearing that a seven-day trial was held in March and April of 2005, during which DeMattia acted as lead trial prosecutor in his capacity as an Essex County Assistant Prosecutor, see id. ¶¶ 21, 42, 44;

and it appearing that during the trial, Wright testified against Miller in support of the prosecution's case, see id. ¶¶ 50–56;

and it appearing that during the trial, DeMattia made several affirmative statements about Wright's credibility, see id. ¶¶ 57, 60;

and it appearing that DeMattia and/or Muhammad "suppress[ed]," "conceal[ed]," and "failed and refused to disclose" the existence and contents of the CCH Report to Miller prior to, during, and after the trial, see, e.g., id. ¶¶ 65, 69, 71, 73;

and it appearing that Wright's pending Morris County criminal charge was neither introduced nor discussed at any point during the trial, despite the existence of the CCH Report and DeMattia and/or Muhammad's knowledge of the same, see id. ¶¶ 60, 68;

and it appearing that at the conclusion of the seven-day trial, a jury found Miller guilty on all charges, see id. ¶ 44;

and it appearing that on May 13, 2005, Judge Thomas R. Vena sentenced Miller to a term of thirty years' imprisonment without the possibility of parole, a consecutive seven-year term for aggravated assault with the possibility of parole, a concurrent four-year term for unlawful possession of a handgun, and merged the unlawful possession of a handgun with a purpose to use it unlawfully against the person of another with the murder and aggravated assault counts, see id.

3

¶ 45;

and it appearing that sometime thereafter, Miller appealed his conviction to the New Jersey Appellate Division and filed several post-conviction motions, all of which were denied, see id. ¶ 46;

and it appearing that in May of 2019, Miller moved for a new trial, based on DeMattia's and/or Muhammad's failure to disclose Wright's pending Morris County criminal charges prior to and during Wright's testimony at trial, see id. ¶¶ 77–78;

and it appearing that on June 1, 2023, Judge Verna G. Leath granted Miller's motion for a new trial and vacated his conviction, see id. ¶ 79;

and it appearing that on June 30, 2023, Miller was released from state prison custody, see id. ¶ 3 & n.1;

and it appearing that on March 28, 2024, Plaintiffs commenced this lawsuit against Defendants and alleges five causes of action under 42 U.S.C. § 1983: (i) denial of liberty, due process, and a fair trial under the Fourth, Fifth, Sixth, and Fourteenth Amendments, against Muhammad and DeMattia ("Count I"), see id. ¶¶ 94–100; (ii) malicious prosecution under the Fourth, Fifth, and Fourteenth Amendments, against Muhammad and DeMattia ("Count II"), see id. ¶¶ 101–07; (iii) denial of due process and a fair trial under the Fifth and Fourteenth Amendments, against Muhammad and DeMattia, see id. ¶¶ 108–12; (iv) municipal liability against the City of Newark, see id. ¶¶ 113–27; and (v) municipal liability against the State of New Jersey, see id. ¶¶ 128–41;

and it appearing that on January 7, 2025, DeMattia moved for judgment on the pleadings pursuant to Rule 12(c), see generally DeMattia's Mot.;

and it appearing that on January 31, 2025, the City Defendants moved for dismissal

pursuant to Rule 12(b)(6) for failure to state a claim, see generally City's Mot.;

and it appearing that City Defendants first argue for the dismissal of the Complaint against Muhammad because the Complaint fails to describe Muhammad's personal involvement in the allegedly unconstitutional conduct, see City's Mot. at 7–8;

and it appearing that a plaintiff must allege facts showing that the named defendants had personal involvement in the alleged wrongs to plead a plausible claim for relief under 42 U.S.C. § 1983, Rode v. Dellarciprete, 845 F.2d 1195, 1207–08 (3d Cir. 1988); see also Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) (holding that defendants "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved" (per curiam) (citation modified));

and it appearing that here, Muhammad's personal involvement in the underlying criminal proceeding—both by way of allegedly withholding the CCH Report and by allegedly initiating a criminal proceeding—is apparent from the Complaint;

and it appearing that Plaintiffs allege with sufficient particularity Muhammad's role as "co-chief detective[]" of the investigation into the shooting, Compl. ¶ 37;

and it appearing that Muhammad "canvassed the people present when the shooting occurred and identified" potential eyewitnesses, including Wright, id. ¶ 38;

and it appearing that Muhammad and DeMattia "prepared, approved and filed" the criminal complaint against Miller on January 18, 2002, see id. ¶ 39;

and it appearing that Muhammad and DeMattia "requested and received" the CCH Report on or about February 8, 2005, see id. ¶ 62;

and therefore, Plaintiffs have alleged sufficient facts at this stage to demonstrate that Muhammad was personally involved in the alleged wrongs;

5

and it appearing that City Defendants next argue for the dismissal of the Complaint against Muhammad because the Complaint fails to allege that Muhammad committed a constitutional violation, see City's Mot. at 8–10;

and it appearing that a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law" to bring a claim under 42 U.S.C. § 1983, West v. Atkins, 487 U.S. 42, 48 (1988);

and it appearing that Count II of Plaintiffs' Complaint asserts a claim against Muhammad under 42 U.S.C. § 1983 for malicious prosecution, alleging violations of the Fourth, Fifth, and Fourteenth Amendments, see Compl. ¶¶ 101–07;

and it appearing to state a claim for malicious prosecution under the Fourth Amendment and Fourteenth Amendment,[4] a plaintiff must establish that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding," Halsey v. Pfeiffer, 750 F.3d 273, 296–97 (3d Cir. 2014) (internal quotation marks and citation omitted);

and it appearing that "although prosecutors are generally responsible for initiating criminal proceedings, a police officer may be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor which was used to initiate the criminal

---

[4] See Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993) ("[Plaintiff's] malicious prosecution claim was asserted as a violation of the due process clause. We have recognized such a claim under section 1983, so long as the plaintiff proves the existence of the elements of the common law tort of malicious prosecution."); see also Black v. Montgomery Cnty., 835 F.3d 358, 369 n.11 (3d Cir. 2016) (declining to distinguish between Fourth and Fourteenth Amendment claims where the alleged misconduct "infected the entirety of the criminal proceeding, from securing the indictment through trial").

proceeding or otherwise interfered with the prosecutor's informed discretion," Connoly v. Borough of Bogota, No. 07-2083, 2008 WL 915126, at *2 n.5 (D.N.J. Mar. 27, 2008) (citation modified);

and it appearing that here, Plaintiffs' Complaint lacks any allegations of Muhammad providing false information to DeMattia or otherwise interfering with DeMattia's informed discretion;

and it appearing that Plaintiffs' Fifth Amendment claim against Muhammad fails because the Due Process Clause of the Fifth Amendment applies only to actions of the federal government and not to state actors or entities,[5] see U.S. Const. amend. V; U.S. Const. amend. XIV, § 1; see also Dusenbery v. United States, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" (citation omitted));

and therefore, Plaintiffs' malicious prosecution claim under 42 U.S.C. § 1983 fails to state a claim and must be dismissed as against Muhammad;

and it appearing that Count I and Count III of Plaintiffs' Complaint asserts claims against Muhammad under 42 U.S.C. § 1983 for withholding evidence, alleging violations of the Fourth,

---

[5] The Fifth Amendment provides, inter alia, that no person "shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. It bears noting that Plaintiffs refer to Muhammad's and DeMattia's alleged Fifth Amendment violations as they relate to Miller's due process rights. See Compl. ¶¶ 64 ("This [CCH Report] is quintessential Brady evidence to which Miller had an absolute right under the Fifth and Fourteenth Amendment to receive."), 80 (The "concealment and suppression [of Brady evidence was] intentional and in bad faith and violated Miller's due process rights under the Fifth and Fourteenth Amendments."), 106 (DeMattia's and Muhammad's conduct "was a substantial and proximate cause of Miller's . . . deprivation . . . [of] his right to substantive and procedural due process under the Fifth and Fourteenth Amendments."). If Plaintiffs are asserting a violation of Miller's Fifth Amendment right against self-incrimination, such a claim is not discernable from the allegations contained within the Complaint.

Fifth,[6] Sixth,[7] and Fourteenth Amendments, see Compl. ¶¶ 94–100, 108–112;

and it appearing that a defendant's due process rights under Brady v. Maryland are violated when police officers or prosecutors withhold evidence that is exculpatory and material, see 373 U.S. 83, 87 (1963);

and it appearing that a "Brady [due process] violation occurs if: (1) the evidence at issue is favorable to the accused, because either exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material,'" Breakiron v. Horn, 642 F.3d 126, 133 (3d Cir. 2011) (internal citation omitted);

and it appearing that "police officers and other state actors may be liable under § 1983 for failing to disclose exculpatory information to the prosecutor," Gibson v. Superintendent of N.J. Dep't of L. & Pub. Safety-Division of State Police, 411 F.3d 427, 443 (3d Cir. 2005) (emphasis added), overruled on other grounds by Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010);

and it appearing that Plaintiffs fails to allege that Muhammad failed to disclose the CCH Report to DeMattia, the lead trial prosecutor against Miller, see generally Compl.;

and it further appearing that Muhammad had no obligation to disclose the CCH Report to Miller or Miller's defense counsel, see Gibson, 411 F.3d at 443;

and therefore, Plaintiffs' Brady due process claim under 42 U.S.C. § 1983 fails to state a claim and must be dismissed as against Muhammad;

---

[6] Plaintiffs' Fifth Amendment claims contained in Count I and Count III against Muhammad are respectively dismissed for the reasons stated above.

[7] Count I includes reference to a Sixth Amendment violation under 42 U.S.C. § 1983. But neither Plaintiffs' Complaint nor Plaintiffs' Opposition to the City's Motion explain the applicability of the provisions of the Sixth Amendment, even after being prompted. Compare City's Mot. at 13, with ECF No. 40. Plaintiffs' failure to oppose or respond to the City Defendants' argument for dismissal of Plaintiffs' Sixth Amendment claim, when Plaintiffs had an opportunity to do so, results in a waiver of the claim. See Dreibelbis v. Scholton, 274 F. App'x 183, 185 (3d Cir. 2008); Hollister v. U.S. Postal Service, 142 F. App'x 576, 577 (3d Cir. 2005) (noting that where a party represented by counsel does not respond to arguments raised in a motion to dismiss, the motion may be deemed unopposed and the court may grant it). Thus, the Court dismisses Plaintiffs' 42 U.S.C. § 1983 claim based on alleged violations the Sixth Amendment.

and therefore, as Plaintiffs have failed to state any claim against Muhammad, Plaintiffs' Complaint is dismissed without prejudice as to Defendant Muhammad;

and it appearing that City Defendants next argue for the dismissal of Plaintiffs' Complaint against the City of Newark for failure to state a claim for municipal liability under Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), see City's Mot. at 17–20;

and it appearing that municipal liability under 42 U.S.C. § 1983 requires an underlying constitutional violation, Ford v. County of Hudson, 729 F. App'x 188, 196 n.4 (3d Cir. 2018) (citing Brown v. Commonwealth of Pa. Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 482 (3d Cir. 2003)); see also Monell, 436 U.S. at 691;

and it appearing that as set forth above, Plaintiffs failed to sufficiently allege Muhammad committed a constitutional violation;

and therefore, Plaintiffs' claims against the City of Newark must be dismissed without prejudice;

and it appearing that DeMattia argues for dismissal because he is entitled to absolute prosecutorial immunity, see DeMattia's Mot. at 7–16;

and it appearing that Count II of Plaintiffs' Complaint asserts a claim against DeMattia under 42 U.S.C. § 1983 for malicious prosecution, alleging violations of the Fourth, Fifth,[8] and Fourteenth Amendments, see Compl. ¶¶ 101–07;

and it appearing that here, the conduct complained of involves DeMattia (1) initiating or causing the initiation and continuation of Miller's prosecution "by and through the suppression

---

[8] As above, see supra, Plaintiffs' Fifth Amendment claim against DeMattia fails because the Fifth Amendment applies only to actions of the federal government and not to state actors or entities. See U.S. Const. amend. V; U.S. Const. amend. XIV, § 1; see also Nguyen v. U.S. Cath. Conf., 719 F.2d 52, 54 (3d Cir. 1983) ("The limitations of the [F]ifth [A]mendment restrict only federal governmental action . . . .").

and/or destruction of" the CCH Report and (2) "thereafter manufactur[ing] false evidence" by soliciting false testimony, id. ¶ 102;

and it appearing that, generally, "state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role," Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006);

and it appearing that absolute immunity "extends to [prosecutors'] acts that are 'intimately associated with the judicial phase of the criminal process,' such as 'initiating a prosecution and . . . presenting the State's case," id. at 135 (quoting Imbler v. Pachtman, 424 U.S. 409, 431 (1976));

and it appearing that prosecutors are generally immune from failing to disclose exculpatory evidence before and during trial, see id. at 137–38;

and it appearing that prosecutors are generally immune from "soliciting false testimony from witnesses in grand jury proceedings, probable cause hearings, and trial," see Henderson v. Union County, No. 14-7708, 2017 WL 4861622, at *3 (D.N.J. Oct. 27, 2017) (collecting cases);

and it appearing that here, DeMattia did not receive the CCH Report until years after Miller was criminally charged, compare Compl. ¶ 39 (criminal complaint filed on January 18, 2002), with id. ¶ 62 (CCH Report requested and received on or around February 8, 2005);

and it appearing that Plaintiffs concede that DeMattia is entitled to absolute prosecutorial immunity "for his suppression of the [CCH Report] prior to and during trial," ECF No. 29 at 10;

and it appearing that DeMattia is similarly entitled to absolute prosecutorial immunity for allegedly soliciting false testimony during trial, see Henderson, 2017 WL 4861622, at *3;

and therefore, DeMattia is entitled to absolute immunity against Plaintiffs' claims under 42 U.S.C. § 1983 for malicious prosecution;

and it appearing that Count I and Count III of Plaintiffs' Complaint asserts claims against

DeMattia under 42 U.S.C. § 1983 for withholding and/or falsifying evidence, alleging violations of the Fourth, Fifth,[9] Sixth,[10] and Fourteenth Amendments, see Compl. ¶¶ 94–100, 108–112;

and it appearing that Plaintiffs argue that DeMattia is not entitled to absolute prosecutorial immunity for "his continued suppression of the [CCH Report] post-sentencing for some 20 years," ECF No. 29 at 10;[11]

and it appearing that in determining the applicability of absolute immunity, the Court must first "ascertain just what conduct forms the basis for the plaintiff's cause of action," Roberts v. Lau, 90 F.4th 618, 625 (3d Cir. 2024) (citation omitted);

and it appearing that absolute immunity does not protect a prosecutor's conduct "[a]fter a conviction is obtained" unless that conduct is "part of the prosecutor's continuing personal involvement as the state's advocate in adversarial post-conviction proceedings," Yarris, 465 F.3d at 137;

and it appearing that DeMattia's immunity defense must be apparent from the face of the Complaint, see Munchinski v. Solomon, 618 F. App'x 150, 155–56 (3d Cir. 2015) (citing Wilson v. Rackmill, 878 F.2d 772, 776 (3d Cir. 1989));

and it appearing that here, Plaintiffs provide cursory, insufficient allegations of DeMattia's conduct following Miller's conviction and through Miller's release from state prison custody;

and it appearing that Plaintiffs allege that "[s]ubsequent to [the] conclusion of Miller's trial in 2005, and through 2023, [DeMattia] failed and refused to disclose and continued to intentionally

---

[9] Plaintiffs' Fifth Amendment claims contained in Count I and Count III against DeMattia are respectively dismissed for the reasons stated above. See, e.g., supra note 7.

[10] Plaintiffs' Sixth Amendment claim contained in Count I against DeMattia is dismissed for the reasons stated above. See supra note 6.

[11] Given Plaintiffs' concession that DeMattia is entitled to absolute immunity for withholding the CCH Report prior to and during trial, see ECF No. 29 at 10, the Court need only analyze DeMattia's assertion of absolute immunity in defense of his alleged conduct after Miller's conviction.

11

and deliberately conceal and suppress the existence of [the CCH Report]," Compl. ¶ 69;

and it appearing that Plaintiffs allege that "[s]ubsequent to the conviction and sentencing of [Miller], and up through 2022, [DeMattia was] continually aware of the [CCH Report] and willfully, deliberately and intentionally disregarded and withheld and suppressed that evidence so as to continually prejudice [Miller]," id. ¶ 73;

and it appearing that Plaintiffs allege that Miller's "direct appeal to the Appellate Division was denied, as were several post-conviction motions," id. ¶ 46, but Plaintiffs do not otherwise describe DeMattia's involvement in Miller's post-conviction relief efforts, or whether DeMattia was actively involved in Miller's post-conviction relief efforts by suppressing, concealing, disregarding, or withholding the CCH Report, or in what capacity any opposition by DeMattia occurred;[12]

and it appearing that, without more, Plaintiffs' allegations of DeMattia's post-conviction conduct are insufficient to evaluate the scope, if any, of DeMattia's immunity, see Munchinski, 618 F. App'x at 155–56 (Unable to "conclude at this stage that the [p]rosecutors are entitled to absolute immunity" because "the immunity defense [was not] apparent from the face of the complaint[.]"); see also Gainey v. City of Phila., 704 F. Supp. 3d 589, 605 (E.D. Pa. 2023) (finding allegations of post-conviction conduct insufficient to overcome prosecutor's absolute immunity);

and therefore, the Court is unable to determine from the record before it whether DeMattia is entitled to absolute immunity for his post-conviction conduct;

and therefore, DeMattia's Motion is denied as to Plaintiffs' claims for violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 based on DeMattia's post-conviction

---

[12] In their Opposition to DeMattia's Motion, Plaintiffs include the only specific instance of DeMattia's conduct following Miller's conviction. See ECF No. 29 at 9 n.2 (DeMattia appeared "on behalf of the State on February 08, 2008, to oppose Miller's PCR petition."). This description is absent from Plaintiffs' Complaint.

conduct;

**IT IS** on this 15th day of August, 2025;

**ORDERED** that DeMattia's Motion for Judgment on the Pleadings, ECF No. 26, is **GRANTED in part** and **DENIED in part**,[13] and the City's Motion to Dismiss, ECF No. 32, is **GRANTED**; and it is further

**ORDERED** that Plaintiff is granted leave to file an amended complaint within thirty (30) days of the entry of this Order.

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT COURT JUDGE**

---

[13] Any subsequent pleadings should specifically address whether Plaintiffs state a claim against Muhammad for Fourth and Fourteenth Amendment violations (Counts I & III) based on withholding evidence, and whether DeMattia's post-conviction conduct is sufficient to overcome DeMattia's assertion of absolute immunity (Counts I & III).